1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYLER R. BROWN,<br><br>Plaintiff,<br><br>v.<br><br>ALLEN, et al.,<br><br>Defendants. | No.  2:20-cv-1734 WBS DB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. §1983.  Plaintiff alleges defendants violated her Eighth Amendment rights when they failed to protect her from attacks by other inmates.  Before the court is defendants' motion for summary judgment.  For the reasons set forth below, this court will recommend defendants' motion be granted in part and denied in part.

## BACKGROUND

This case is proceeding on plaintiff's first amended complaint ("FAC") filed July 8, 2021. (ECF No. 16.)  Plaintiff complains of conduct that occurred in August 2019 when she was incarcerated at Mule Creek State Prison ("MCSP").  Plaintiff identifies two defendants, Correctional Officers Allen and Chao.

Plaintiff alleges the following.  On August 27, 2019, inmate Lindsey attempted to attack plaintiff.  Both defendants observed what was happening and were "laughing at the situation as it

1   was happening."  Plaintiff approached the defendants after she had "gotten out of Lindsey's

2   reach" and told defendants that she believed her "safety was at risk."  Defendant Allen told

3   plaintiff that he did not "see a reason of [plaintiff's] safety being in jeopardy" as inmate Lindsey

4   had not succeeded in striking plaintiff.  Defendant Chao agreed with Allen.

5          Inmate Lindsey returned to the cell he shared with plaintiff while "yelling threats to do

6   [plaintiff] bodily harm."  Defendants Allen and Chao were closer to inmate Lindsey than plaintiff

7   and were watching while this occurred.  Plaintiff was later ordered back to her cell by defendants.

8   Plaintiff protested, saying "I can't!  You heard what he said.  He's going to hurt me."  Defendant

9   Chao told plaintiff that because she was not hit by inmate Lindsey, she needed to return to her cell

10   or she would receive a disciplinary write-up.  Plaintiff then requested to leave the yard due to

11   safety concerns, but defendant Chao also denied this request as "there was no fight."

12          The following day, inmate Lindsey and two other inmates attacked plaintiff.  Plaintiff was

13   "hospitalized with a concussion, laceration on right ear (5 stitches) and a broken nose bone that

14   had caved in a nasal pathway, resulting in surgery to unobstruct breathing through that nasal

15   path."  Plaintiff seeks damages.

16          On April 6, 2023, defendants filed the present motion for summary judgment.  (ECF No.

17   41.)  Defendants argue plaintiff failed to exhaust her administrative remedies for her claims

18   against defendant Allen.  They further argue that the undisputed facts show plaintiff cannot

19   succeed on her Eighth Amendment claims for failure to protect and that they are entitled to

20   qualified immunity.  Plaintiff filed an opposition to defendants' motion (ECF No. 47) and

21   defendants filed a reply (ECF No. 48).  Defendants also filed objections to evidence submitted by

22   plaintiff.  (ECF No. 49.)

23                              **MOTION FOR SUMMARY JUDGMENT**

24   **I.  Summary Judgment Standards under Rule 56**

25          Summary judgment is appropriate when the moving party "shows that there is no genuine

26   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

27   Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

28   proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litigation, 627

                                                    2

F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The

moving party may accomplish this by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials" or by showing that such materials "do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need

only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial.  See

Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

circumstance, summary judgment should be granted, "so long as whatever is before the district

court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

existence of this factual dispute, the opposing party typically may not rely upon the allegations or

denials of its pleadings but is required to tender evidence of specific facts in the form of

affidavits, and/or admissible discovery material, in support of its contention that the dispute

exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  However, a complaint that

is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified

complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise

from personal knowledge and contain specific facts admissible into evidence.  See Jones v.

Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir.

1   1995) (accepting the verified complaint as an opposing affidavit because the plaintiff

2   "demonstrated his personal knowledge by citing two specific instances where correctional staff

3   members . . . made statements from which a jury could reasonably infer a retaliatory motive");

4   McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d

5   407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because

6   it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury

7   pursuant to 28 U.S.C. § 1746.  His verified complaint therefore carries the same weight as would

8   an affidavit for the purposes of summary judgment.").  The opposing party must demonstrate that

9   the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

10  governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

11  could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

12  242, 248 (1986).

13        To show the existence of a factual dispute, the opposing party need not establish a

14  material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be

15  shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

16  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

17  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

18  order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (citations

19  omitted).

20        "In evaluating the evidence to determine whether there is a genuine issue of fact," the

21  court draws "all reasonable inferences supported by the evidence in favor of the non-moving

22  party."  Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011).  It is the

23  opposing party's obligation to produce a factual predicate from which the inference may be

24  drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

25  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

26  party "must do more than simply show that there is some metaphysical doubt as to the material

27  facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

28  ////

4

1 nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation

2 omitted).

3 **II. Analysis**

4      Defendants argue the undisputed facts show that:  (1) plaintiff failed to exhaust her

5 administrative remedies with respect to her claim against defendant Allen; (2) defendants were

6 not deliberately indifferent to plaintiff's safety; and (3) defendants are entitled to qualified

7 immunity.  Plaintiff disputes many of defendants' facts.[1]  This court finds defendant Allen should

8 be entitled to summary judgment because plaintiff failed to exhaust her administrative remedies

9 for a failure to protect claim against Allen.  With respect to defendants' other arguments, this

10 court finds disputed issues of material fact with respect to plaintiff's claim that defendants failed

11 to protect her from harm from inmate Lindsey.  However, this court finds no competent evidence

12 showing that plaintiff can succeed on a claim that defendants failed to protect her from inmates

13 Jackson and Moore.  Defendants should be granted summary judgment on this latter issue and

14 denied summary judgment with respect to plaintiff's claims that they failed to protect her from

15 defendant Lindsey and on the issue of qualified immunity.

16      **A.  Exhaustion of Administrative Remedies**

17      Defendants argue that plaintiff failed to identify defendant Allen in the grievances she

18 submitted about the events on August 27 and 28, 2019.  Therefore, plaintiff failed to exhaust her

19 administrative remedies prior to filing this suit as required by the Prison Litigation Reform Act

20 ("PLRA").  Plaintiff attempts to show that her grievances and challenges to disciplinary write-ups

21 included references to Allen.

22 ////

23 ////

24 ////

---

25 [1] Defendants filed objections to plaintiff's "evidence" contained in her responses to defendants'
26 statement of undisputed facts ("DSUF").  (ECF No. 49.)  As stated below, because plaintiff did
   not verify her responses to the DSUF, this court does not consider them as evidence.  Therefore,
27 this court does not find it necessary to rule on defendants' objections individually.  To the extent
   defendants' objections are relevant, this court has considered them when analyzing the evidence
28 plaintiff presents in her verified FAC and in her sworn deposition testimony.

1          **1. Legal Standards**

2              **a. PLRA Exhaustion Requirement**

3              The PLRA mandates that "[n]o action shall be brought with respect to prison conditions

4    under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or

5    other correctional facility until such administrative remedies as are available are exhausted." 42

6    U.S.C. § 1997e(a).  Compliance with deadlines and other critical prison grievance rules is

7    required to exhaust.  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative

8    remedies requires "using all steps that the agency holds out, and doing so properly").  "[T]o

9    properly exhaust administrative remedies prisoners 'must complete the administrative review

10   process in accordance with the applicable procedural rules,' - rules that are defined not by the

11   PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007)

12   (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir.

13   2009) ("The California prison system's requirements 'define the boundaries of proper

14   exhaustion.'" (quoting Jones, 549 U.S. at 218)).

15             Although "the PLRA's exhaustion requirement applies to all inmate suits about prison

16   life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA

17   is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc).  As explicitly

18   stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative

19   remedies 'as are available.'"  Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42

20   U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for

21   improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies

22   that rational inmates cannot be expected to use are not capable of accomplishing their purposes

23   and so are not available.").  "We have recognized that the PLRA therefore does not require

24   exhaustion when circumstances render administrative remedies 'effectively unavailable.'"  Sapp,

25   623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935

26   (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy

27   remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,'

28   and the prisoner need not further pursue the grievance.").

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure.  Albino, 747 F.3d at 1168.  "Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  Id. at 1171-72.  A remedy is "available" where it is "capable of use; at hand."  Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171).  Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief."  Booth v. Churner, 532 U.S. 731, 738 (2001).  If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Albino, 747 F.3d at 1172.  Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."  Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).  "[T]he ultimate burden of proof," however, never leaves the defendant.  Id.

### b.  California's Inmate Appeal Process

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  At the time plaintiff filed his appeals,[2] inmates in California proceeded through three levels of appeal to exhaust the appeal process:  (1) formal written appeal on a CDCR 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR").  Cal. Code Regs. tit. 15, § 3084.7.  In specific circumstances, the first level review may be bypassed.  Id.  The third

---

[2] In 2020, California changed the grievance system from a three-tier system to a two-tier system. That change was effective in June 2020, after plaintiff initiated the relevant appeals in the present case.  See Cal. Code Regs. tit. 15, § 3480.  All citations to the California code in the text refer to the prior law.  It can be found here:  https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2020/04/Master-File-Appeals-Emerg-Regs_ADA.pdf

level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3).  However, a cancellation or rejection decision does not exhaust administrative remedies.  Id. § 3084.1(b).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(3).  "If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question."  Id.  Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and they must "describe the specific issue under appeal and the relief requested."  Id. § 3084.2(a)(4).  The appeal should not involve multiple issues that do not derive from a single event.  Id. § 3084.6(b)(8).

An inmate has thirty calendar days to submit their grievance from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed."  Cal. Code Regs. tit. 15, § 3084.8(b).

### 2. Discussion of Exhaustion

Defendants filed a statement of undisputed facts ("DSUF") as required by Local Rule 260(a).  (ECF No. 41-1.)  Local Rule 260(b) requires a party opposing a motion for summary judgment to specifically address each fact alleged to be undisputed and, for those facts the party disputes, provide a citation to "any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."  E.D. Cal. R. 260(b).  Plaintiff largely complied with Rule 260(b).  While plaintiff did not file a brief or other documents describing her opposition to defendants' motion, some of those arguments are contained in her responses to the DSUF.  This court has also attempted to discern plaintiff's

////

////

arguments through review of the FAC and plaintiff's deposition testimony.[3]  With respect to plaintiff's assertions of fact in her responses to the DSUF, because she did not verify those responses, this court does not consider her statements therein as evidence.  This court looks to plaintiff's verified FAC, sworn deposition testimony, and documentary evidence as the evidence she has submitted in opposition to defendants' motion.

The material facts regarding the exhaustion issue are not disputed.[4]  It is not disputed that plaintiff submitted the following three grievances regarding the events of August 27 and 28, 2019:

> a.  CDCR Appeal 602 #MCSP-B 19-05226 submitted by plaintiff on December 19, 2019.  (Ex. 1 to Decl. of H. Moseley, ECF No. 41-4 at 58-84.)  Plaintiff complained that her due process rights were violated with respect to Rules Violation Report ("RVR") #6900411, issued August 27, 2019 for her failure to comply with orders to enter her cell. Both defendants are mentioned in the documentation regarding this grievance.  In the decision at the second level of administrative review, it is mentioned that the only witness plaintiff requested for the RVR hearing was defendant Chao.  (Id. at 67.)  In the document entitled "Disciplinary Hearing Results," plaintiff's questioning of Chao is recorded.  In response to a question from plaintiff regarding what Chao witnessed between plaintiff and Lindsey, Chao stated that "BROWN and LINDSEY were talking and then BROWN refused to go back to his cell."  When asked by plaintiff what reasons plaintiff had given Chao for refusing to return to her cell, Chao stated:  "BROWN s[t]ated that LINDSEY thought BROWN was spreading rumors of his 'business' and that he did not want to go back in the cell or get in

---

[3] Defendants lodged a paper copy of the transcript of plaintiff's deposition.  (See ECF No. 42.)
[4] Defendants' DSUF includes statements about the prison's grievance procedures.  (See DSUF ##1-6.)  These procedures are set out in the California Code of Regulations and are not in dispute.

trouble.  BROWN stated that he just wanted to move into a different cell and this was not a safety concern issue." (Id. at 72.)  It is noted that plaintiff "did not provide questions for Officer Allen at the hearing." (Id.)  It is further noted that plaintiff said, "I wasn't refusing housing.  This is all related to a fight." (Id.)

b.  CDCR Appeal 602 #MCSP-B 19-04373 submitted by plaintiff on October 22, 2019.  (Ex. 3 to Decl. of H. Moseley, ECF No. 41-4 at 27-57.)  Plaintiff complained about the process for the disciplinary hearing on RVR #6896575, written on August 28, 2019 regarding plaintiff's interaction with inmates Jackson and Moore.  Plaintiff mentions a failure to protect in this grievance but only states that CDCR and B yard officers failed to protect her.  (Id. at 30, 31.)

c.  CDCR Appeal 602 #MCSP-B 19-04544 submitted by plaintiff on October 31, 2019.  (ECF No. 51-1.)  Here, plaintiff complains about RVR #6896572, which was issued for her altercation with Lindsey on August 28.  She specifically states that defendant Chao[5] failed to protect her after plaintiff told Chao that she could no longer house with inmate Lindsey due to the risk to her safety.  (Id. at 8.)  Plaintiff further stated that Chao would not allow plaintiff to put Lindsey on her enemy list.  (Id. at 10.)  Plaintiff does not mention any conduct by defendant Allen.

////

////

////

////

---

[5] It appears that plaintiff spells defendant's name as "Chen" or "Chow" in the grievance. Defendants do not dispute that plaintiff is referring to defendant Chao and do not contend that plaintiff failed to exhaust her remedies with respect to her failure to protect claim against Chao.

1        The parties also provide a copy of a document entitled "RVR

2    Supplemental" regarding RVR #6896572.[6]  (ECF No. 41-3 at 52-53;

3    No. 47 at 25.)  The document reflects that Chao responded to the

4    investigating officer's questions in essentially the same way he had

5    responded to the questions posed by plaintiff that are described above

6    with respect to grievance #19-05266.  However, the investigating

7    officer also asked Chao about plaintiff's and Lindsey's demeanors.

8    Chao stated that both were "agitated."  (Id.)  In addition, the document

9    includes questions the investigating officer posed to other inmates.  The

10   only relevant responses were from inmate Contreras who stated the

11   following:  He separated plaintiff and Lindsey over "cellie issues."

12   Plaintiff was "scared" and Lindsey was "upset."  Contreras had plaintiff

13   sit near the podium to protect her from Lindsey.  Contreras told

14   defendant Allen that plaintiff and Lindsey "were not getting along."

15   Contreras advised plaintiff that she should not return to her cell because

16   she and Lindsey were not "getting along."  (Id.)

17        Plaintiff argues that MCSP was on notice that she also had a complaint about defendant

18   Allen for three reasons. First, plaintiff states that she mentioned failure to protect by both

19   defendant Chao and another "B yard officer" in grievance #19-04544.  In #19-04544, plaintiff

20   stated:  "Brought it to c/o Chen (sic) attention  B- Building Officer I could no longer house with

21   I/M Lindsey or safely program with him."  (ECF No. 51-1 at 8.)  Plaintiff then goes on to discuss

22   what "he" did.  Plaintiff's reference to "B Building Officer" appears to be further identification of

23   Chao.  This interpretation is supported by the fact plaintiff complains of actions by just one

---

[6] The original copy of plaintiff's grievance #19-04544 and the related RVR #6896572 submitted
by defendants was incomplete so the court ordered them to submit a complete copy.  (See Feb. 2,
2024 Order (ECF No. 50).)  In response, they submitted "the complete grievance and disciplinary
results."  (ECF No. 51-1 at 2.)  However, a copy of this "RVR Supplemental" is not included.
Because it is attached to the Declaration of H. Fletes submitted by defendants with their motion
for summary judgment (ECF No. 41-3 at 52-53), this court considers it an undisputed part of the
proceedings on RVR #6896572.

1  person.  Grievance #19-04544 gave MCSP no reason to think plaintiff was accusing a second

2  officer of failure to protect him.  Plaintiff does make a reference in #19-04373 to B yard officers.

3  This is plaintiff's grievance about the RVR related to plaintiff's interactions with Jackson and

4  Moore on August 28.  Plaintiff states that "CDCR" and "B yard officers" failed to protect her.

5  (ECF No. 41-4 at 30, 31.)

6      Second, plaintiff points out that during the RVR hearing, plaintiff asked inmate Contreras,

7  "What did you discuss with C/O Allen over Brown and Lindsey?"  (ECF No. 47 at 25.)

8  Contreras's response simply shows that Allen was present.  It does not show that plaintiff

9  complained that Allen failed to protect her.

10     Third, plaintiff points out that in his declaration, Allen states that he witnessed plaintiff

11  refusing to go to her cell when she was escorted there by Officer Chao.  In addition, this court

12  notes that defendant Allen is referenced in a notation regarding grievance #19-05226 that plaintiff

13  did not ask Allen any questions at the RVR hearing.  (ECF No. 41-4 at 72.)  Again, these

14  references show Allen was present.  However, they do not show that plaintiff was charging Allen

15  with a violation of his constitutional rights.

16     The fact that MCSP had notice that defendant Allen was present during the events on

17  August 27 is not the same as having notice that plaintiff contended Allen failed to protect her.

18  Plaintiff's reference to "B yard officers" in grievance #19-04373 is insufficiently specific to

19  identify Allen and does not mention the events on August 27.  Rather, the grievance focuses on

20  August 28 and the undisputed evidence, set out below, shows that defendant Allen was not

21  working in B-yard at that time.  A reasonable reading of grievance #19-04373 is that plaintiff was

22  complaining about the failure of the officers on the yard on August 28 to protect her.

23     Moreover, plaintiff does not contend she was unaware of Allen's name.  California

24  regulations required an inmate to "list all staff members involved and [] describe their

25  involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(3).  The PLRA requires compliance

26  with available state regulations in order to exhaust administrative remedies.  Jones v. Bock, 549

27  U.S. 199, 218 (2007).  Plaintiff did not comply with the regulations and, in any event, did not put

28  ////

1    MCSP on notice that she was alleging Allen violated her Eighth Amendment rights.  This court

2    will recommend plaintiff's claim against defendant Allen be dismissed for failure to exhaust.

3            **B.  Failure to Protect**

4            Defendants primarily argue that the undisputed evidence shows plaintiff did not face an

5    excessive risk of harm and that, even if she did, because defendant did not have the authority to

6    move plaintiff out of B yard, they cannot be charged with failing to take all reasonable actions to

7    protect her.  This court does not find defendants' arguments persuasive or their facts undisputed

8    with respect to the risk of harm from defendant Lindsey.  Below, this court finds disputed issues

9    of fact regarding whether plaintiff faced an excessive risk of harm, whether defendants knew of

10   that risk, and whether defendants were deliberately indifferent to plaintiff's safety when they

11   failed to take reasonable actions to protect plaintiff.  This court further finds the competent,

12   material evidence is undisputed that plaintiff cannot succeed on a failure to protect claim

13   regarding the risk of harm from inmates Jackson and Moore.

14            **1.  Legal Standards**

15           Prison officials have a duty "to take reasonable measures to guarantee the safety of

16   inmates, which has been interpreted to include a duty to protect prisoners."  Labatad v.

17   Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Farmer v. Brennan,

18   511 U.S. 825, 832-33 (1994) and Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)).  To

19   establish a violation of this duty, a prisoner must "show that the officials acted with deliberate

20   indifference to threat of serious harm or injury to an inmate."  Labatad, 714 F.3d at 1160 (citing

21   Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)).

22           A failure to protect claim under the Eighth Amendment requires a showing that "the

23   official [knew] of and disregard[ed] an excessive risk to inmate . . . safety."  Farmer, 511 U.S. at

24   837.  "Whether a prison official had the requisite knowledge of a substantial risk is a question of

25   fact subject to demonstration in the usual ways, including inference from circumstantial evidence,

26   . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very

27   fact that the risk was obvious."  Id. at 842 (citations omitted).  The duty to protect a prisoner from

28   serious harm requires that prison officials take reasonable measures to guarantee the safety and

1    well-being of the prisoner.  Id. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

2    Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment,"

3    plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of

4    mind."  Wilson, 501 U.S. at 297 (internal quotations marks, emphasis, and citations omitted).

5              **2.  Undisputed Material Facts Re Failure to Protect Claims**

6              a.   During all relevant times, plaintiff was an inmate at MCSP who was

7                   housed in the B yard.  (FAC, ECF No. 16 at 7-8.)

8              b.   During all relevant times, defendants were correctional officers working at

9                   MCSP.  (Defendants' Declarations, ECF Nos. 41-5 and 41-8.)

10             c.   On August 27, 2019, plaintiff had an interaction with inmate Lindsey.

11                  (ECF No. 16 at 7-8; DSUF #7.)

12             d.   At the time of that interaction, plaintiff and Lindsey were cellmates.

13                  (DSUF #10.)

14             e.   Defendant Chao observed all or part of that interaction.  (DSUF #7.)

15             f.   After the interaction, plaintiff refused to return to her cell.  (DSUF #7.)

16             g.   Both defendants observed plaintiff refusing to return to her cell.  (DSUF

17                  ##7, 11.)

18             h.   After plaintiff refused to return to her cell, defendant Chao took plaintiff to

19                  the program office.  (DSUF ##9, 11.)

20             i.   At the program office, Chao wrote plaintiff an RVR for her refusal to

21                  return to her cell.  (DSUF #11.)

22             j.   When Chao and plaintiff left the program office, Chao referred plaintiff to

23                  his supervisor.  (DSUF #9.)

24             k.   Chao did not have the authority to move plaintiff to a new cell without

25                  approval from a supervisor when the reason for the move was plaintiff's

26                  refusal to return to her cell.  (DSUF #9.)

27             l.   Defendants did not have the authority to make the decision to move

28                  plaintiff to a new yard.  (ECF Nos. 41-5 and 41-8.)  Moving an inmate to a

1                new yard requires direction from the Institutional Classification

2                Committee.  (DSUF #12.)

3       m.  After leaving the program office, plaintiff was moved to a different cell,

4                also in B Yard.  (DSUF #10.)

5       n.  Plaintiff alleges inmate Lindsey attacked her as soon as she went out to the

6                yard on the morning of August 28.  (DSUF #13.)

7       o.  Plaintiff did not report this attack by Lindsey.  (DSUF #13.)

8       p.  On August 28, plaintiff and inmate Lindsey engaged in a physical

9                altercation.[7]  Officers intervened.  Plaintiff was issued an RVR for this

10               altercation.  (DSUF #14.)

11       q.  On August 28 after the altercation with Lindsey, plaintiff signed a peaceful

12                co-existence chrono for Lindsey which meant that: "after you fight with

13                someone nothing else will happen and you are safe to return to the yard."

14                Plaintiff claims she was pressured to sign the chrono by an unnamed

15                lieutenant.  (DSUF #15.)

16       r.  After signing the chrono, plaintiff was in a physical altercation with

17                inmates Jackson and Moore.  (Plt.'s Depo. at 51.)  During the altercation,

18               plaintiff was injured.  Plaintiff was issued an RVR for this altercation.

19               (DSUF #16.)

20       s.  Plaintiff is not aware of a connection between inmate Lindsey and inmates

21               Jackson and Moore.  Plaintiff has no evidence to show that defendants

22               were aware of a connection between inmate Lindsey and inmates Jackson

23               and Moore.[8]  (DSUF #17.)

24

---

25 [7] This court recognizes that plaintiff is alleging the altercation with Lindsey was an attack, not a mutually instigated fight.  This court's use of the term "physical altercation" is not meant to

26 indicate that plaintiff was not attacked, only that the parties involved had a physical interaction that was harmful or potentially harmful to one or both parties.

27

28 [8] In her response to the DSUF, plaintiff appears to be alleging that defendants should have known Lindsey, and perhaps Jackson and Moore, were gang members.  (ECF No. 47 at 7.)  However, in

t.   Neither defendant was working on August 28 at the times plaintiff's altercations with Lindsey and with Moore and Jackson occurred.  (DSUF #18.)

### 3.   Disputed Material Facts re Failure to Protect Claims

Defendants' declarations are extremely brief, notable for what they omit rather than what they state.  For example, Chao does not explain what he told his supervisor when he referred plaintiff to his supervisor after leaving the program office on August 27.  Because that information is material to plaintiff's claim and is not in the record, this court considers it, and other material omissions, as disputed facts.

a.   What occurred during the interaction between plaintiff and Lindsey on August 27

Plaintiff alleges that inmate Lindsey attempted to "attack" her on August 27.  (FAC at 7-8.)  Lindsey tried "to swing and hit me."  (Plt.'s Depo. at 29.)  She states that she backed away to prevent Lindsey from hitting her and that inmate Contreras intervened by getting between plaintiff and Lindsey.  (FAC at 7-8; Plt.'s Depo. at 36.)

In his declaration, Chao simply refers to his testimony at the RVR hearing where he said only that he saw plaintiff and Lindsey talking and saw plaintiff refuse to return to her cell.  (ECF No. 41-5.)  Allen does not say anything about what occurred between Lindsey and plaintiff on the 27th.  (ECF No. 41-8.)  Neither defendant directly disputes plaintiff's description of her interaction with Lindsey on the 27th.

b.   Whether Lindsey threatened plaintiff after their interaction on August 27

Both defendants are silent with respect to plaintiff's allegations that when Lindsey was returned to the cell he shared with plaintiff, he shouted

---

her deposition plaintiff testified that she did not know whether Lindsey, Jackson, and Moore were members of the same gang.  (Plt.'s Depo. at 80-81.)  Plaintiff presents no competent evidence to show a connection between Lindsey and Jackson and Moore.

for about 15 or 20 minutes that he was going to harm plaintiff.  (Plt.'s Depo. at 38.)  Plaintiff further alleges that Chao and Allen heard Lindsey make those threats.  (Id. at 30.)

        c.   <u>What reasons plaintiff gave defendant Chao and/or Allen for refusing to return to her cell</u>

    Plaintiff states that she told Chao she did not want to go back to her cell with Lindsey because she feared for her safety.  (FAC at 7-8; Plt.'s Depo. at 29.)  According to plaintiff, both defendants told her she had to go back to her cell because Lindsey had not hit her.  (Plt.'s Depo. at 29.)

    Chao specifically says plaintiff told him the requested cell move was not motivated by a concern for her safety.  Chao states that plaintiff told him that "Lindsay[9] thought she (inmate Brown) was spreading rumors of his (inmate Lindsay) business, and that she did not want to go back in the cell or get in trouble. Inmate Brown stated that she just wanted to move into a different cell and this was not a safety concern issue."  (ECF No. 41-5 at 2.)  Allen's declaration makes no mention of this interaction.  (ECF No. 41-8.)

        d.   <u>Whether plaintiff asked Chao and/or Allen to move her to a new yard and how they responded</u>

    Plaintiff alleges she asked Chao to be placed in a different yard.  (Plt.s Depo. at 41.)  She further alleges Chao told her that was not an option and if plaintiff continued to refuse to return to her cell, he would write plaintiff up for a rules violation.  (Id. at 41-42.)  Neither defendant addresses this allegation.

////

////

---

[9] While Chao spells this inmate's name here as "Lindsay," it is spelled "Lindsey" throughout both parties' filings and this court uses that latter spelling.

17

e. <u>What Chao told his supervisor when he referred plaintiff to his supervisor</u>

Plaintiff does not make any allegations about this apparent interaction. In his declaration, Chao makes an oblique statement that: "Cell moves such as those where an inmate is refusing to house, must be approved by a supervisor, as was the case with inmate Brown on August 27, 2019." (ECF No. 41-5 at 2.) The description in the DSUF is a bit more specific. It states that Chao "referred her to his supervisor because he did not have the authority to make a housing change requested by Brown." (DSUF #9.)

f. <u>Whether plaintiff was coerced into signing the peaceful coexistence chrono</u>

Defendants present no evidence to rebut plaintiff's allegation that she was forced to sign the peaceful coexistence chrono despite feeling at risk of harm from Lindsey. (Plt.'s Depo. at 45, 51.) However, their argument makes clear they are challenging this allegation.

**4. Discussion**

Initially this court notes that in her responses to the DSUF, plaintiff repeatedly challenges the procedures employed in considering her grievances and in adjudicating the rules violations. Plaintiff's complaint can also be construed as a challenge to defendant Chao's conduct in giving plaintiff the choice to return to her cell despite verbal threats being made by Lindsey or be charged with a rules violation. Those issues are not before the court as independent claims. This case is proceeding on plaintiff's claims that defendants failed to protect her from harm. (See ECF Nos. 16, 19.)

To prove a claim that defendants violated plaintiff's Eighth Amendment rights by failing to protect her, plaintiff must prove: (1) there was an excessive risk of harm to plaintiff; (2) defendants knew of that risk; and (3) defendants were deliberately indifferent to that risk. <u>Farmer</u>, 511 U.S. at 837. Defendants fail to show facts material to each of these factors are undisputed with respect to a risk of harm from inmate Lindsey. Defendants do show that plaintiff has no evidence that they knew of a risk of harm from defendants Jackson and Moore.

////

18

First, defendants barely address the question of whether plaintiff faced an excessive risk of harm.  Plaintiff alleges that on August 27, defendants knew she faced a risk of bodily harm from Lindsey based on Lindsey's attempt to attack plaintiff and subsequent shouts of threats to harm plaintiff.  Defendants' only direct evidence that could be construed as contrary is Chao's statement that plaintiff told him her refusal to return to her cell was not a safety concern.  They also argue that the fact plaintiff signed a peaceful co-existence chrono the following day shows that plaintiff did not feel Lindsey posed a risk of harm.  However, defendants ignore the fact plaintiff is alleging she was coerced into signing the chrono.  Defendants fail to show it is undisputed that plaintiff did not face an excessive risk of harm from Lindsey.

Second, defendants fail to present undisputed facts showing that they were not aware of the risk of harm to plaintiff.  In her FAC, plaintiff alleges both defendants saw Lindsey attempting to attack her and both were closer to Lindsey than she was so would have heard Lindsey shouting threats to harm plaintiff.  Both defendants fail to refute, or even address, plaintiff's allegations regarding what they saw and heard.  The questions of defendants' knowledge of risks of harm to plaintiff should be decided by a factfinder.

Third, with respect to deliberate indifference, the facts are also in dispute.  There are significant gaps in the information provided by defendants.  Defendants simply rely on the fact that, as correctional officers, they did not have the authority to decide to move plaintiff to a different cell or to move plaintiff to a different yard.  While that may be true, it is not enough to establish defendants took reasonable actions to assure plaintiff's safety.  There is no evidence showing what, if any, discussion Chao had with his supervisor regarding moving plaintiff to a new cell.  If a factfinder finds plaintiff's description of the interactions with Lindsey to be true, then whether Chao explained the situation to his supervisor fully is certainly relevant to the reasonableness of Chao's conduct.

Defendants do show that the competent and material facts demonstrate that plaintiff cannot succeed on a claim that they failed to protect plaintiff from an attack by inmates Jackson and Moore.  Plaintiff admitted in her deposition that she has no evidence connecting Lindsey with

////

19

1   Jackson and Moore, much less any competent evidence demonstrating that defendants knew of

2   such a connection and risk of harm to plaintiff.

3          This court finds defendants have failed to demonstrate that the undisputed facts show that

4   defendants' conduct did not violate plaintiff's Eighth Amendment rights with respect to a risk of

5   harm to plaintiff from defendant Lindsey.  This court further finds that defendants have

6   demonstrated that plaintiff cannot prove defendants knew, or should have known, that plaintiff

7   faced a risk of harm from inmates Jackson and Moore.  Therefore, plaintiff cannot show

8   defendants were deliberately indifferent to a risk presented by Jackson and Moore.  That aspect of

9   plaintiff's claim, and the injuries she suffered as a result of the altercation with Jackson and

10  Moore, should be dismissed from this case.

11         **C. Qualified Immunity**

12                **1. Legal Standards**

13         Government officials enjoy qualified immunity from civil damages unless their conduct

14  violates clearly established statutory or constitutional rights.  Jeffers v. Gomez, 267 F.3d 895, 910

15  (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is

16  presented with a qualified immunity defense, the central questions for the court are: (1) whether

17  the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the

18  defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue

19  was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v.

20  Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in

21  sequence).  "Qualified immunity gives government officials breathing room to make reasonable

22  but mistaken judgments about open legal questions."  Ashcroft v. al-Kidd, 563 U.S. 731, 743

23  (2011).  The existence of triable issues of fact as to whether prison officials were deliberately

24  indifferent does not necessarily preclude qualified immunity.  Estate of Ford v. Ramirez–Palmer,

25  301 F.3d 1043, 1053 (9th Cir. 2002).

26         "For the second step in the qualified immunity analysis—whether the constitutional right

27  was clearly established at the time of the conduct—the critical question is whether the contours of

28  the right were 'sufficiently clear' that every 'reasonable official would have understood that what

he is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting al-Kidd, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al-Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

### 2. Discussion

Defendants do not argue that the standards for a failure to protect claim were not clearly established. They just repeat their argument that plaintiff cannot show they failed to protect her in violation of the Eighth Amendment. Because defendants' arguments rely on disputed facts, they are not entitled to summary judgment on the qualified immunity issue.

## III. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 41) be granted in part and denied in part as follows:

1.  Defendants' motion be granted with respect to defendant Allen's claim that plaintiff failed to exhaust her administrative remedies as to Allen;

2.  Defendants' motion be granted with respect to plaintiff's claim that defendants failed to protect plaintiff from inmates Jackson and Moore on August 28, 2019; and

3.  Defendants' motion be denied in all other respects.

1          These findings and recommendations will be submitted to the United States District Judge

2     assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3     after being served with these findings and recommendations, either party may file written

4     objections with the court.  The document should be captioned "Objections to Magistrate Judge's

5     Findings and Recommendations."  The parties are advised that failure to file objections within the

6     specified time may result in waiver of the right to appeal the district court's order.  <u>Martinez v.</u>

7     <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

8     Dated:  February 8, 2024

9

10

11                                                      DEBORAH BARNES
                                                        UNITED STATES MAGISTRATE JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24     DLB:9
       DB Prisoner Inbox/Civil Rights/ S/brow1734. msj fr
25

26

27

28

22